# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION

NO. 7:10-CR-00111-FL-1
NO. 7:13-CV-00012-FL

| | |
|---|---|
| JONATHAN BLAKE LOGAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This cause comes before the Court upon petitioner Jonathan Blake Logan's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("motion to vacate"). (DE-46). The government seeks to dismiss Logan's motion to vacate. (DE-51). On June 19, 2013, the undersigned notified the parties that the government's motion to dismiss would be converted to one of summary judgment. Logan has responded (DE-56, DE-59) and, accordingly, the motion to vacate and the motion for summary judgment are ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. For the reasons set forth herein, it is RECOMMENDED that Logan's motion to vacate (DE-46) be DENIED and that the government's motion for summary judgment (DE-51) be GRANTED.

I. **BACKGROUND**

Logan was originally charged by criminal information with two drug distribution offenses,

1

for which he was arrested on November 13, 2009.[1]  Pet'r's Mem. Supp. Mot. Vacate 12, DE-46-1.  He was released from custody on December 12, 2009.  *Id.*  Prior to his release, or sometime shortly after his release, Logan entered into a plea agreement[2] with the government. *Id.*  As part of that initial agreement, Logan gave a protected statement to investigators on February 19, 2010 providing information about his involvement in selling and distributing with others "multi-kilogram quantities of crack and powder cocaine" from 1999 until 2009.  *Id.*  At this initial February debriefing, investigators had "high hopes" that they could "use [Logan] proactively, in order to go after many other targets" in the Robeson County area.  Sentencing Hr'g Tr. 12:9-25, DE-44.  However, investigators needed "credible information . . . about people that were involved in the distribution business," which Logan at that time failed to supply.  *Id.* at 13:1-3.  After the debriefing in February, Logan did not cooperate with the government and instead continued to sell illegal drugs.  *Id.* at 13:4-10; *see also* Jonathan Blake Logan Aff. ¶ 3, DE-59 (explaining that he began selling drugs again to build up his street credibility).  Because Logan "didn't follow through with any of the cooperation" the government was "left with only one option, and that was to indict him."  *Id.* at 13:4-6.  Logan was indicted on three counts of drug conspiracy and distribution charges on September 22, 2010.  (DE-1).  He was taken into custody on October 22, 2010.  (DE-15).  When arrested, Logan made a second, unprotected statement to investigators, indicating that "he had been engaged in continuing to sell drugs during the time that

---

1. As these events occurred prior to Logan's indictment on September 22, 2010, they are not reflected in the record. To the extent that the government does not dispute Logan's factual summary of the case, the facts as set forth in the §2255 petition will be accepted as true for purposes of this memorandum, insofar as these facts are not contested and do not conflict with the evidence of record.

2. This agreement does not appear in the record.  In the pleadings, this agreement is alternately referred to as a plea agreement and a proffer.  *Compare* Pet'r's Resp. 4, DE-56 *with* Resp't's Mem. Supp. Mot. Dismiss 2, DE-52.  For the sake of clarity and consistency, this memorandum and recommendation will refer to the 2009 agreement reached between the government and Logan as "the initial agreement."

2

he was not in contact with law enforcement and should have been working proactively with [law enforcement]." Sent. Tr. 13:8-10. Logan also provided "more information at that time about individuals that he had been involved with" that ultimately proved credible and helpful to investigators. *Id.* at 13:11-12. The information provided by Logan prompted the government to later file a §5K1.1 motion for downward departure on his behalf at sentencing.

On January 10, 2011, Logan pleaded guilty pursuant to a written plea agreement to conspiracy to distribute and possess with the intent to distribute more than fifty (50) grams of cocaine base (crack) and more than five (5) kilograms of cocaine, in violation of 21 U.S.C. § 846, as charged in count one of the indictment. (DE-22, DE-23). In the plea agreement, Logan agreed, *inter alia*, to

> waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

Plea Agreement 1-2, DE-23. For its part, the government agreed to dismiss counts two and three of the indictment, and agreed to make known to the Court at sentencing the full extent of any cooperation by Logan. The government further agreed that:

> Pursuant to U.S.S.G. §lB1.8, that self-incriminating information provided by the Defendant pursuant to this Agreement shall not be used against the Defendant in determining the applicable advisory Guideline range, except as provided by §lBl.8 and except as stated in this Agreement. The United States will not, however, withhold from the United States Probation Office any evidence concerning relevant conduct.

*Id.* at 6. At the arraignment hearing held January 10, 2011, Logan testified, *inter alia*, that he had

3

discussed his case and the plea agreement with his trial counsel; that he was satisfied with trial counsel's representation of him; and that his trial counsel was a good lawyer. Arraignment Hr'g Tr. 17-18, DE-45. After engaging Logan in a lengthy colloquy, the presiding magistrate judge found that Logan's guilty plea was knowing, voluntary, and supported by an independent factual basis. *Id.* at 28:10-16.

In preparation for sentencing, the United States probation office submitted its presentence investigation report ("PSR") to the district court on July 22, 2011. The PSR noted that

> [o]n February 19, 2010, LOGAN provided a statement to investigators that was initially considered protected as part of a Plea Agreement; however, he subsequently violated the terms of his agreement with the government, thus rendering the information applicable for guideline calculation purposes. The following chart summarizes LOGAN's statement and subsequent drug accountability.

PSR ¶ 10, DE-31. The PSR then attributed 18,119.26 grams of cocaine base and 3,505.15 grams of cocaine to Logan based on the February 19, 2010 statement he gave investigators. The PSR further noted that, following his arrest in October 2010, Logan gave an unprotected statement to agents indicating that he continued to sell illegal drugs after signing the previous plea agreement. *Id.* at ¶ 11. The PSR attributed another 648.65 grams of cocaine base to Logan based on the October 2010 statement. *Id.* The total amount of drugs attributed to Logan resulted in a base offense level of 38. *Id.* at ¶ 48. The probation officer increased the base offense eight levels due to Logan's use of a firearm, restraint of a victim during the course of the offense, and role as an organizer or leader. *Id.* at ¶¶ 49-51. After a three-level reduction for acceptance of responsibility, the total offense level for Logan was 43; his criminal history category was III. *Id.* at ¶¶ 56-57. With this offense level and criminal history category, the recommended sentencing range for Logan's offense under the Sentencing Guidelines was life imprisonment. PSR ¶ 59.

Defense counsel did not object to the PSR.

At sentencing proceedings on January 5, 2012, the government argued in support of its §5K1.1 motion for downward departure and recommended a sentence of 360 months. Sent. Hr'g Tr. 17:9-10. Defense counsel requested a sentence of 264 months. *Id.* at 19:21-22. Upon consideration of the evidence and arguments by the parties, the district court granted the government's motion for downward departure and sentenced Logan to a 360-month term of imprisonment and five years of supervised release. (DE-39, DE-41). Logan did not appeal.

On January 14, 2012, Logan filed the instant motion pursuant to 28 U.S.C. § 2255, asserting he received ineffective assistance of counsel. The government seeks to dismiss the §2255 motion for failure to state a claim. On June 19, 2013, the Court notified Logan that it intended to treat the government's motion to dismiss as one for summary judgment and allowed Logan additional time to file a response. Logan submitted an affidavit in support of his arguments. The government argues that the motion to vacate is without merit and should be denied.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

5

Case 7:10-cr-00111-FL   Document 60   Filed 07/24/13   Page 5 of 14

met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on such motion. *Id.* at 248-49.

"A document filed pro se is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002). However, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them' . . . . The 'special judicial solicitude' with which a district court should view such pro se complaints does not transformer the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Services for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

**B. 28 U.S.C. § 2255**

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without

6

jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). In such a proceeding, the burden of proof is on the petitioner to establish his claim by a preponderance of the evidence. *See, e.g.*, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); Toribio-Ascencio v. United States, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549 at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence."). Under section 2255, the Court need not hold an evidentiary hearing and may decide the matter on the papers submitted and the record before it when "the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b).

**C.      Effect of Petitioner's Guilty Plea**

A valid guilty plea constitutes admission of the material elements of the crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). The sworn representations made by a criminal defendant at plea proceedings "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Furthermore, a guilty plea normally waives any claim based on non-jurisdictional errors occurring prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). In *Tollett*, the Supreme Court concluded that an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty. The Supreme Court observed that "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the

7

existence as such of an antecedent constitutional infirmity." *Id.* at 266-67. Thus, in a collateral attack, a petitioner may only challenge the voluntary and intelligent character of a plea, such as by demonstrating that he received ineffective assistance of counsel. *Id.*

Notably, statements made by a defendant during a hearing to accept a guilty plea are subject to a strong presumption of veracity, and challenges under 28 U.S.C. § 2255 that contradict these statements may generally be dismissed:

> '[A] defendant's solemn declarations in open court . . . "carry a strong presumption of verity'" . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . 'Indeed, because they do carry such a presumption, they present "a formidable barrier in any subsequent collateral proceedings.'" Thus, in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–"permitting quick disposition of baseless collateral attacks."

United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) (internal citations and quotations omitted).

**D. Ineffective Assistance of Counsel**

Logan asserts his counsel was constitutionally deficient. To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the Court must "indulge a strong presumption that

8

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The second prong is met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

To establish prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). With regard to prejudice at sentencing, a petitioner must show a reasonable probability that he would have received a more lenient sentence but for counsel's errors. *See* Glover v. United States, 531 U.S. 198, 202-04 (2001); United States v. Russell, 34 F. App'x 927, 928 (4th Cir. 2002) (unpublished).

### III. ANALYSIS

Logan argues his counsel was ineffective in failing to object to the PSR. Specifically, Logan contends his counsel should have objected to (1) the attribution of drug quantities based on statements made by Logan; and (2) enhancement based on Logan's role in the offense. Further, Logan contends that his attorney should have challenged the indictment as defective. These arguments are addressed in turn.

#### A. Counsel Was Not Ineffective for Failing to Object to Drug Quantities

First, Logan contends that the statement he gave in February 2010 to investigators was protected under the terms of the initial agreement and should not have been utilized by the probation officer to calculate the drug quantities attributed to him in the PSR. Logan asserts his attorney was ineffective for failing to object to the PSR on this basis.

Section 1B1.8(a) of the Sentencing Guidelines provides that:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided

9

> pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

The provisions of subsection (a) do not apply, however, "in the event there is a breach of the cooperation agreement by the defendant." U.S.S.G. § 1B1.8(b)(4). Moreover, the provisions of subsection (a) "shall not be applied to restrict the use of information . . . known to the government prior to entering into the cooperation agreement[.]" U.S.S.G. § 1B1.8(b)(1).

Here, Logan's argument that his counsel was ineffective for failing to object on the basis of U.S.S.G. § 1B1.8 necessarily requires this Court to first find that the statement Logan gave in February 2010 was a protected statement under U.S.S.G. § 1B1.8. The record does not support such a finding. The plea agreement approved by the Court on January 10, 2011 does not protect the statements made by Logan in February 2010. Instead, the January 10, 2011 plea agreement states that

> self-incriminating information provided by the Defendant pursuant to this Agreement shall not be used against the Defendant in determining the applicable advisory Guideline range, except as provided by §1B1.8 and except as stated in this Agreement. The United States will not, however, withhold from the United States Probation Office any evidence concerning relevant conduct.

Plea Agreement 6, DE-23. Logan did not provide the February 2010 statement "pursuant to" the January 10, 2011 plea agreement; rather, the undisputed evidence shows that Logan provided his February 2010 statement under the terms of the initial agreement negotiated before Logan was indicted on the instant offense. The January 10, 2011 plea agreement wholly replaced the initial agreement. *See* Plea Agreement ¶ 1, DE-23 ("This Memorandum constitutes the full and complete record of the Plea Agreement. There are no other agreements between the parties in addition to or different from the terms herein."). As such, the information Logan shared in February 2010 constitutes "information . . . known to the government prior to entering into the

10

cooperation agreement," U.S.S.G. § 1B1.8(b)(1), and its use in calculating Logan's guideline sentence did not violate U.S.S.G. § 1B1.8.

Furthermore, assuming the February 2010 statement was protected by the initial agreement, it is clear from the record that Logan did not abide by the initial agreement to cooperate. Although Logan agreed to cooperate with the government and gave his February 2010 statement to investigators pursuant to the initial agreement, he did not relate any credible information about other drug distributors at that time, did not cooperate, and instead continued to sell illegal drugs. Sent. Hr'g Tr. 13:1-21; 7:22-24; *see also* Pet'r's Resp. 2, DE-56 (verifying that he was released from incarceration "so that he could work proactively with authorities in their investigation of others" but that "the information and cooperation . . . which Petitioner was to provide failed to materialize"). Logan did not cooperate and provide credible information concerning the unlawful activities of others until he was indicted. Because the evidence shows that Logan did not, in fact, cooperate in accordance with the initial agreement, his February 2010 statement is not shielded thereunder. *See* U.S.S.G. § 1B1.8(b)(4) (provisions of U.S.S.G. § 1B1.8(a) do not apply "in the event there is a breach of the cooperation agreement by the defendant.").

Because the use of his statement did not violate U.S.S.G. § 1B1.8(a), Logan cannot show that his counsel was ineffective in failing to object to the PSR on this basis. The undersigned therefore RECOMMENDS that the motion to vacate be denied as to this claim, and that the government's motion for summary judgment be granted.

### B. Counsel Was Not Ineffective in Failing to Object to Petitioner's Role in the Offense

Next, Logan argues his counsel was ineffective for failing to object to the four-level enhancement he received under U.S.S.G. § 3B1.1(a), as set forth in paragraph 51 of the PSR, for

11

his leadership role in the offense. Section 3B1.1(a) of the Sentencing Guidelines instructs that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Paragraphs 8-13 of the PSR summarize the offense conduct supporting the U.S.S.G. § 3B1.1(a) enhancement in this case. Logan complains that the evidence supporting enhancement is derived from the statements he made to investigators, and that these statements cannot be used against him because they are protected by the plea agreement. *See* Pet'r's Mem. Supp. Mot. Vacate at 16 ("If [any] of these factors can be met, it is from statements given by Petitioner and those statements cannot be used, because, Petitioner has not attempted to withdraw his guilty plea and he has not been untruthful."). However, as explained *supra*, the statements made by Logan were not protected and were thus properly utilized to determine Logan's sentencing exposure. Furthermore, evidence against Logan came not only from his own statements, but from information related by a confidential informant, cooperating witnesses, and co-conspirators. *See* PSR ¶ 8, DE-31. Because the evidence supported application of the U.S.S.G. § 3B1.1(a) enhancement, Logan fails to show that his counsel rendered deficient performance in failing to object to the PSR on this basis, or that, but for his counsel's failure to object, the enhancement would not have been applied. For this reason, the undersigned RECOMMENDS that the motion to vacate be denied as to this assignment of error, and that the motion to for summary judgment be granted.

   **C.** **Petitioner Has Waived His Claim of Alleged Defective Performance Ocurring Prior to the Plea of Guilty**

Finally, Logan argues the indictment against him was defective, and that his counsel's "failure to object to the deficient Indictment before Petitioner pled guilty was deficient performance." Pet'r's Mem. Supp. Mot. Vacate 14, DE-46-1. However, in his plea agreement, Logan waived

12

"all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea." Plea Agreement 1-2, DE-23. The Fourth Circuit has held that a defendant can, through a plea agreement, waive his appellate rights, as well as the right to collaterally attack his conviction. *See, e.g.*, United States v. Poindexter, 492 F.3d 263, 267-268 (4th Cir. 2007); Lemaster, 403 F.3d at 220. These waivers are valid and enforceable so long as they are knowing and voluntary. *See* United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005); Lemaster, 403 F.3d at 220.

Here, after engaging Logan in a lengthy colloquy, the magistrate judge presiding over the arraignment found that Logan's guilty plea was knowing, voluntary, and supported by an independent factual basis. Arraignment Hr'g Tr. 17-18, DE-45. At the arraignment hearing, Logan testified, *inter alia*, that he had discussed his case and the plea agreement with his trial counsel; that he was satisfied with trial counsel's representation of him; and that his trial counsel was a good lawyer. *Id.* at 28:10-16. Because there is nothing to suggest that Logan's plea waiver was anything other than knowing and voluntary, he may not now pursue an ineffective assistance of counsel claim to the extent that the facts giving rise to the claim occurred prior to entry of his guilty plea. *See, e.g.,* United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994); Drake v. United States, Nos. 1:09CV128, 1:07CR53-1, 2011 U.S. Dist. LEXIS 29008, at *3 (N.D. W.Va. Mar. 21, 2011) (noting that plea agreement waivers may "bar ineffective assistance of counsel claims to the extent that the deficient performance complained of occurred prior to a knowing and voluntary plea and waiver"). For this reason, the undersigned RECOMMENDS the Court DENY the motion to vacate and GRANT the motion for summary judgment.

13

## IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Logan's motion to vacate (DE-46) be DENIED and that the government's motion to dismiss, converted to one of summary judgment (DE-51) be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, July 24, 2013.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE